IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ANTOINETTE SUCHENKO,

                 Plaintiff,

      v.

EBAGS, INC.,

            Defendant.

Civil Action No.

COMPLAINT FOR INJUNCTION

**COMPLAINT FOR PERMANENT INJUNCTION**
**REQUIRING CHANGES TO CORPORATE POLICY AND THE ELIMINATION OF**
**DIGITAL ACCESS BARRIERS PURSUANT TO 42 U.S.C. § 12188(a)(2)**

Antoinette Suchenko ("Plaintiff") seeks a permanent injunction requiring a change in eBags, Inc.'s ("Defendant" or "eBags") corporate policies to cause eBags' website to become, and remain, accessible to individuals with visual disabilities. In support thereof, Plaintiff respectfully asserts as follows:

**INTRODUCTION**

1.     "Being unable to access websites puts individuals at a great disadvantage in today's society, which is driven by a dynamic electronic marketplace and unprecedented access to information." U.S. Dep't of Justice, Statement of Eve L. Hill before the Senate Comm. on Health, Educ., Labor & Pensions, at 3 (May 14, 2013).[1]

2.     Antoinette Suchenko has been legally blind since undergoing retina surgery more than 20 years ago. Today, she uses a screen reader to navigate the Internet.

---

[1]  Available at  https://www.justice.gov/iso/opa/ola/witness/05-14-13-crt-hill-testimony-re-the-americans-with-disabilities-act-and-entertain.201372314.pdf) (last accessed Dec. 11, 2017).

3.      Screen readers convert a website's text, buttons, links, and text fields to audio. Without screen reader programs, blind or visually impaired individuals cannot independently access the Internet, where everyday activities such as shopping, banking, research, and education have become commonplace.

4.      eBags is an online retailer of handbags, luggage, backpacks, laptop bags, and travel accessories. The website offers bags and accessories from more than 650 brands including Samsonite, JanSport, Kate Spade, Fossil, Patagonia and Nike.

5.      eBags offers these products and online services at its website, www.ebags.com ("Website"), which it owns, operates, and controls.

6.      According to the eBags' LinkedIn page, "eBags is the world's leading online retailer of bags and travel accessories. With over 205 million unbiased user reviews, we pride ourselves on our dedication and reputation for a reliable, safe and enjoyable customer-centric online shopping experience." [2]

7.      Unfortunately, eBags denies approximately 7 million[3] Americans who are visually impaired access to its Website's goods, content, and services because the Website is largely incompatible with the screen reader programs these Americans use to navigate an increasingly ecommerce world.

8.      Plaintiff brings this civil rights action against eBags to enforce Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("Title III"), which requires, among other things, that a public accommodation (1) not deny persons with disabilities the benefits of its

---

[2] *See* https://www.linkedin.com/company/12961/ (last accessed Dec. 12, 2017).
[3] Perkins School of the Blind (Watertown, MA), *America's Blind Spot: What's Preventing Us From Including Those Who Are Blind in the Sighted World?*, p. 5, *available at* http://www.perkins.org/sites/default/files/perkins-americas-blind-spot-ebook.pdf (last accessed December 11, 2017).

services, facilities, privileges and advantages; (2) provide such persons with benefits that are equal to those provided to nondisabled persons; (3) provide auxiliary aids and services—including electronic services for use with a computer screen reading program—where necessary to ensure effective communication with individuals with a visual disability, and to ensure that such persons are not excluded, denied services, segregated or otherwise treated differently than sighted individuals; and (4) utilize administrative methods, practices, and policies that provide persons with disabilities equal access to online content.

9.     By failing to make its Website available in a manner compatible with computer screen reader programs, eBags, a public accommodation subject to Title III, deprives blind and visually-impaired individuals the benefits of its online goods, content, and services—all benefits it affords nondisabled individuals—thereby increasing the sense of isolation and stigma among these Americans that Title III was meant to redress.

10.     Because eBags' Website has never been accessible and because eBags does not have, and has never had, an adequate corporate policy that is reasonably calculated to cause its Website to become and remain accessible, Plaintiff invokes 42 U.S.C. § 12188(a)(2) and seeks a permanent injunction requiring:

   a) that eBags retain a qualified consultant acceptable to Plaintiff ("Web Accessibility Consultant") who shall assist it in improving the accessibility of its Website, including third party content and plug-ins, so the goods and services on it may be equally accessed and enjoyed by individuals with vision related disabilities;

   b) that eBags work with the Web Accessibility Consultant to ensure that all employees involved in website and content development be given web accessibility training on a biennial basis, including onsite training to create accessible content at the design and development stages;

   c) that eBags work with the Web Accessibility Consultant to perform an automated accessibility audit on a periodic basis to evaluate whether eBags' Website may be equally accessed and enjoyed by individuals with vision related disabilities on an ongoing basis;

d) that eBags work with the Web Accessibility Consultant to perform end-user accessibility/usability testing on at least a quarterly basis with said testing to be performed by humans who are blind or have low vision, or who have training and experience in the manner in which persons who are blind use a screen reader to navigate, browse, and conduct business on websites, in addition to the testing, if applicable, that is performed using semi-automated tools;

e) that eBags incorporate all of the Web Accessibility Consultant's recommendations within sixty (60) days of receiving the recommendations;

f) that eBags work with the Web Accessibility Consultant to create a Web Accessibility Policy that will be posted on its Website, along with an e-mail address and toll free phone number to report accessibility-related problems;

g) that eBags directly link from the Website's  homepage, a statement that indicates that Defendant is making efforts to maintain and increase the accessibility of its Website to ensure that persons with disabilities have full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of the Defendant through the Website;

h) that eBags accompany the public policy statement with an accessible means of submitting accessibility questions and problems, including an accessible form to submit feedback or an email address to contact representatives knowledgeable about the Web Accessibility Policy;

i) that eBags provide a notice, prominently and directly linked from the Website's homepage, soliciting feedback from visitors to the Website on how the accessibility of the Website can be improved. The link shall provide a method to provide feedback, including an accessible form to submit feedback or an email address to contact representatives knowledgeable about the Web Accessibility Policy;

j) that eBags provide a copy of the Web Accessibility Policy to all web content personnel, contractors responsible for web content, and Client Service Operations call center agents ("CSO Personnel") for the Website;

k) that eBags train no fewer than three of its CSO Personnel to automatically escalate calls from users with disabilities who encounter difficulties using the Website. eBags shall have trained no fewer than 3 of its CSO personnel to timely assist such users with disabilities within CSO published hours of operation. eBags shall establish procedures for promptly directing requests for assistance to such personnel including notifying the public that customer assistance is available to users with disabilities and describing the process to obtain that assistance;

l) that eBags modify existing bug fix policies, practices, and procedures to include the elimination of bugs that cause the Website to be inaccessible to users of screen reader technology;

m) that Plaintiff, their counsel and its experts monitor each Website for up to two years after the Mutually Agreed Upon Consultant validates the Website is free of accessibility errors/violations to ensure eBags has adopted and implemented adequate accessibility policies. To this end, Plaintiff, through her counsel and its experts, shall be entitled to consult with the Web Accessibility Consultant at their discretion, and to review any written material, including but not limited to any recommendations the Website Accessibility Consultant provides eBags.

11.     Web-based technologies have features and content that are modified on a daily, and in some instances an hourly, basis, and a one time "fix" to an inaccessible website will not cause the website to remain accessible without a corresponding change in corporate policies related to those web-based technologies. To evaluate whether an inaccessible website has been rendered accessible, and whether corporate policies related to web-based technologies have been changed in a meaningful manner that will cause the website to remain accessible, the website must be reviewed on a periodic basis using both automated accessibility screening tools and end user testing by disabled individuals.

## JURISDICTION AND VENUE

12.     The claims alleged arise under Title III such that this Court's jurisdiction is invoked pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

13.     eBags purposefully targets and otherwise solicits business from Pennsylvania residents through its Website. Because of this targeting, it is not unusual for eBags to conduct business with Pennsylvania residents. In fact, the opposite is true: eBags clearly does business over the Internet with Pennsylvania residents, having entered into contracts with Pennsylvania residents that involve the knowing and repeated transmission of computer files over the Internet. *See Gniewkowski v. Lettuce Entertain You*, Order, ECF No. 123 (W.D. Pa Apr. 25, 2017) *clarified by* Order of Court, ECF No. 169 (W.D. Pa. June 22, 2017) (Judge Schwab) (The court exercised personal jurisdiction over an out-of-forum defendant for claims its website is inaccessible to a visually disabled resident of the forum state.); *see also Access Now Inc. v. Otter Products, LLC,*

Case No. 1:17-cv-10967-PBS, 2017 WL 6003051 (D.Mass. Dec. 4, 2017) (exercising personal jurisdiction over forum-based plaintiff's website accessibility claims against out-of-forum website operator).

14.     Venue in this District is proper under 28 U.S.C. § 1391(b)(2) because this is the judicial district in which a substantial part of the acts and omissions giving rise to Plaintiff Suchenko's claims occurred.

## PARTIES

15.     Plaintiff Suchenko is and, at all times relevant hereto, has been a resident of Allegheny County, Pennsylvania. Plaintiff Suchenko is and, at all times relevant hereto, has been legally blind and is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2) and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq.*

16.     Defendant, eBags, Inc., is a Delaware corporation with its principle place of business located at 5500 Greenwood Plaza Boulevard, Suite 160, Greenwood Village, Colorado 80111. eBags' Website is a public accommodation pursuant to 42 U.S.C. § 12181(7).

## FACTS APPLICABLE TO ALL CLAIMS

17.     While the increasing pervasiveness of digital information presents an unprecedented opportunity to increase access to goods, content, and services for people with perceptual or motor disabilities, website developers and web content developers often implement digital technologies without regard to whether those technologies can be accessed by individuals with disabilities. This is notwithstanding the fact that accessible technology is both readily available and cost effective.

18.     Individuals with vision related disabilities may access websites using screen reader programs that convert text to audio. Screen reader software provides the primary method by which

a blind person may independently use the Internet. Unless websites are designed to be read by
screen reader software, individuals suffering visual impairments are unable to fully access websites
and the content and services they make available.

**EBAGS' ONLINE CONTENT**

19.     eBags' Website allows consumers to search for and purchase handbags, luggage,
backpacks, laptop bags, and travel accessories from more than 650 brands, including Samsonite,
JanSport, Kate Spade, Fossil, Patagonia, and Nike.

20.     Consumers may use the Website to connect with eBags on social media, using sites
like Facebook, YouTube, LinkedIn, Pinterest, Instagram, and Twitter.

21.     Through the Website, consumers may also join eBag's rewards program, access
special member discounts they would otherwise not receive, and sign up for eBags' email
newsletter.

22.     Consumers' use of the Website is subject to eBags' Terms of Use, which provide:

Thank you for visiting eBags.com (the Site). This Site is provided by eBags, Inc. and/or its
affiliates (eBags) as a service to our customers. Please review the following terms that
govern your use of the Site. eBags reserves the right to update or modify these Terms of
Use at any time without prior notice to you. For this reason, you should review these Terms
of Use whenever you visit this Site. By accessing, viewing, browsing and/or using the Site
after we post changes to these Terms of Use, you unconditionally accept and agree to those
changes, whether or not you actually reviewed them. If you violate any of the terms of
these Terms of Use you may, without limitation, have your access canceled and you may
be permanently banned from accessing, viewing, browsing and using the Site.[4]

**HARM TO PLAINTIFF**

23.     Plaintiff Suchenko has attempted to use eBags' Website. Unfortunately, because of
eBags' failure to build its Website in a matter that is compatible with screen reader programs, she

---

[4] *See* Terms of Use (available at https://www.ebags.com/help/termsofuse) (last accessed Dec. 13,
2017).

7

is unable to understand, and thus is denied the benefit of, much of the content and services she wishes to access or use.

24.     Ms. Suchenko attempted to access the Website with the same screen reader program she uses to browse the Internet, but found it to be largely unusable due to various accessibility barriers. For example:

(a)     Ms. Suchenko experienced significant frustration attempting to create an account on eBags' Website. There is no link or button, such as "Join," to notify users of screen reader software how to proceed.

(b)     Links on various pages of the Website are not "active." For example, Ms. Suchenko attempted to put a backpack in her online cart. Unfortunately, the Website's "add to cart" prompt does not operate with her screen reader program.

(c)     Ms. Suchenko could not locate the Website's Terms of Use with screen reader.

25.     As a result of visiting eBags' Website and from investigations performed on her behalf, Plaintiff is aware the Website includes at least the following additional barriers blocking her full and equal use:

(a) The Website does not provide a text equivalent for every non-text element;

(b) Headings and labels do not describe topic or purpose;

(c) The visual presentation of text and images lack the minimum contrast ratio;

(d) The function or purpose of links are not be presented to users;

(e) Web pages lack titles that describe their topic or purpose;

(f) Non-script elements are present;

(g) Labels or instructions are not always provided when content requires user input;

8

(h)  Headings levels are skipped that provide document structure and facilitate keyboard navigation.

(i)  In content implemented using markup languages, elements do not always have complete start and end tags, are not nested according to their specifications, may contain duplicate attributes, and IDs are not always unique; and

(j)  The name and role of all UI elements cannot be programmatically determined; things that can be set by the user cannot be programmatically set; and/or notification of changes to these items is not available to user agents, including assistive technology.

26.     These barriers, and others, deny Plaintiff full and equal access to all of the services the Website offers, and now deter her from attempting to use the Website. Still, Plaintiff would like to, and intends to, attempt to access eBags' Website in the future to research the products and services the Website offers, or to test the Website for compliance with the ADA.

27.     If the Website were accessible, *i.e.* if eBags removed the access barriers described above, Plaintiff could independently research products and services, view, access, and agree to eBags' Terms of Use, and contact customer service, via eBags' Website.

28.     Though eBags may have centralized policies regarding the maintenance and operation of its Website, eBags has never had a plan or policy that is reasonably calculated to make its Website fully accessible to, and independently usable by, individuals with vision related disabilities. As a result, the complained of access barriers are permanent in nature and likely to persist.

29.     The law requires that eBags reasonably accommodate Plaintiff's disabilities by removing these existing access barriers. Removal of the barriers identified above is readily achievable and may be carried out without much difficulty or expense.

9

30.     Plaintiff's above request for injunctive relief is consistent with the work performed by the United States Department of Justice, Department of Transportation, and U.S. Architectural and Transportation Barriers Compliance Board (the "Access Board"), all of whom have relied upon or mandated that the public-facing pages of website complies with an international compliance standard known as Web Content Accessibility Guidelines version 2.0 AA ("WCAG 2.0 AA"), which is published by an independent third party known as the Worldwide Web Consortium ("W3C").[5]

31.     All parties have been, and in the absence of an injunction will continue to be, injured by eBags' failure to provide its online content and services in a manner that is compatible with screen reader technology.

### EBAGS' KNOWLEDGE OF WEBSITE ACCESSIBILITY REQUIREMENTS

32.     eBags has long known that screen reader technology is necessary for individuals with visual disabilities to access its online content and services, and that it is legally responsible for providing the same in a manner that is compatible with these auxiliary aids.

33.     Indeed, the Disability Rights Section of the DOJ reaffirmed in a 2015 Statement of Interest before the United States District Court for the District of Massachusetts that it has been a "longstanding position" of the Department of Justice "that the ADA applies to websites of public accommodations." *See National Association of the Deaf v. Massachusetts Institute of Technology*, No. 3:15-cv-300024-MGM, DOJ Statement of Interest in Opp. To Motion to Dismiss or Stay, Doc. 34, p. 4 (D. Mass. Jun. 25, 2015) ("MIT Statement of Interest"); *see also National Association of the Deaf. v. Harvard University*, No. 3:15-cv-30023-MGM, DOJ Statement of Interest of the United States of America, Doc. 33, p.4 (D. Mass. Jun. 25, 2015) ("Harvard Statement of Interest").

---

[5] Available at https://www.w3.org/ (last accessed Dec. 11, 2017).

**THE PARTIES HAVE NO ADMINISTRATIVE REMEDIES TO PURSUE**

34.     There is no DOJ administrative proceeding that could provide Plaintiff with Title III injunctive relief.

35.     While DOJ has rulemaking authority and can bring enforcement actions in court, Congress has not authorized it to provide an adjudicative administrative process to provide Plaintiff with relief.

36.     Plaintiff alleges violations of existing and longstanding statutory and regulatory requirements to provide auxiliary aids or services necessary to ensure effective communication, and courts routinely decide these types of effective communication matters.

37.     Resolution of Plaintiff's claims does not require the Court to unravel intricate, technical facts, but rather involves consideration of facts within the conventional competence of the courts, *e.g.* (a) whether eBags offers content and services on its Website, and (b) whether Plaintiff can access the content and services.

**SUBSTANTIVE VIOLATION**
**(Title III of the ADA, 42 U.S.C. § 12181 *et seq.*)**

38.     The assertions contained in the previous paragraphs are incorporated by reference.

39.     eBags' Website is a place of public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181(7). *See Gniewkowski v. Lettuce Entertain You Enterprises, Inc.,* No. 16-cv-1898, 2017 WL 1437199, at *8-9 (W.D. Pa. Apr. 21, 2017) (Judge Schwab) ("Importantly, however, in both *Ford* and *Peoples*, the alleged discrimination occurred at a location where neither the insurance carrier in *Ford,* nor the credit card company in *Peoples,* had ownership or possession, or exercised control. Conversely, in the instant matter, the alleged discrimination has taken place on property that AmeriServ owns, operates and controls—the AmeriServ Website.").

40.     In the broadest terms, the ADA prohibits discrimination on the basis of a disability in the full and equal enjoyment of goods and services of any place of public accommodation. 42 U.S.C. § 12182(a). Thus, to the extent eBags does not provide Plaintiff with full and equal access to its Website, it has violated the ADA.

41.     In more specific terms, Title III of the ADA imposes statutory and regulatory requirements to ensure persons with disabilities are not excluded, denied services, segregated or otherwise treated differently than other individuals as a result of the absence of auxiliary aids and services. 42 U.S.C. § 12182(b)(2)(A); 28 C.F.R. §§ 36.303(a), (c). Under these provisions, public accommodations must furnish appropriate auxiliary aids and services that comply with their effective communication obligations. *Id.; see also* MIT Statement of Interest, p. 4; Harvard Statement of Interest, p. 4.

42.     Auxiliary aids and services are necessary when their absence effectively excludes an individual from participating in or benefiting from a service, or fails to provide a like experience to the disabled person.

43.     Auxiliary aids and services include, but are not limited to, audio recordings, screen reader software, magnification software, optical readers, secondary auditory programs, large print materials, accessible electronic and information technology, other effective methods of making visually delivered materials available to individuals who are blind or have low vision, and other similar services and actions. 28 C.F.R. §§ 36.303(b)(2), (4).

44.     In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability. 28 C.F.R. §§ 36.303(c)(1)(ii). To this end, the Ninth Circuit has explained, "assistive technology is not frozen in time: as technology advances, [ ] accommodations

12

should advance as well." *Enyart v. Nat'l Conference of Bar Examiners, Inc.*, 630 F.3d 1153, 1163 (9th Cir. 2011).

45.     By failing to provide its Website's content and services in a manner that is compatible with auxiliary aids, eBags has engaged, directly, or through contractual, licensing, or other arrangements, in illegal disability discrimination, as defined by Title III, including without limitation:

(a)     denying individuals with visual disabilities opportunities to participate in and benefit from the goods, content, and services available on eBags' Website;

(b)     affording individuals with visual disabilities access to eBags' Website that is not equal to, or effective as, that afforded others;

(c)     utilizing methods of administration that (i) have the effect of discriminating on the basis of disability; or (ii) perpetuate the discrimination of others who are subject to common administrative control;

(d)     denying individuals with visual disabilities effective communication, thereby excluding or otherwise treating them differently than others; and/or

(e)     failing to make reasonable modifications in policies, practices, or procedures where necessary to afford its services, privileges, advantages, or accommodations to individuals with visual disabilities.

46.     eBags has violated Title III by, without limitation, failing to make its Website's services accessible by screen reader programs, thereby denying individuals with visual disabilities the benefits of the Websites, providing them with benefits that are not equal to those it provides others, and denying them effective communication. *See Gniewkowski v. Lettuce Entertain You,* 2017 WL 1437199, at *8-9 ("This Court finds that because AmeriServ owns, operates, and controls

the property through which persons access its services, this matter is distinguishable from the *Ford* and *Peoples* cases. This Court also finds that the allegations set forth in Plaintiff's Complaint establish that the alleged discrimination—Plaintiffs' inability to access financial services information—took place at a property that AmeriServ owns, operates, and controls. Accordingly, the Court will deny AmeriServ's 12(b)(6) Motion because Plaintiffs have properly pled a legally cognizable claim under Title III of the ADA.").

47.   eBags has further violated Title III by, without limitation, utilizing administrative methods, practices, and policies that allow its Website to be made available without consideration of consumers who can only access the company's online goods, content, and services with screen reader programs.

48.   Making its online goods, content, and services compatible with screen reader programs does not change the content of eBags' Website or result in making the Website different, but rather enables individuals with visual disabilities to access the Website EBags already provides. *See* MIT Statement of Interest, p. 20; *see also* Harvard Statement of Interest, p.

49.   eBags' ongoing and continuing violations of Title III have caused, and in the absence of an injunction will continue to cause, harm to Plaintiff and other individuals with visual disabilities.

50.   Plaintiff's claims are warranted by existing law or by non-frivolous argument for extending, modifying, or reversing existing law or for establishing new law.

51.   Pursuant to 42 U.S.C. § 12188 and the remedies, procedures and rights set forth and incorporated therein, Plaintiff requests relief as set forth below.

14

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for:

52.     A Declaratory Judgment that at the commencement of this action eBags was in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that eBags took no action that was reasonably calculated to ensure that its Website is fully accessible to, and independently usable by, individuals with visual disabilities;

53.     A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.504(a) which directs eBags to take all steps necessary to bring its Website into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that its Website is fully accessible to, and independently usable by, blind individuals, and which further directs that the Court shall retain jurisdiction for a period to be determined to ensure that eBags has adopted and is following an institutional policy that will in fact cause eBags to remain fully in compliance with the law—the specific injunctive relief requested by Plaintiff is described more fully in paragraph 10 above.

54.     Payment of costs of suit;

55.     Payment of reasonable attorneys' fees, pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505, including costs of monitoring Defendant's compliance with the judgment (*see Hadix v. Johnson*, 143 F.3d 246 (6th Cir. 1998), *aff'd in part, rev'd in part*, 527 U.S. 343 (1999); *Jenkins v. Missouri*, 127 F.3d 709 (8th Cir. 1997); *Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761 (5th Cir. 1996); *Stewart v. Gates*, 987 F.2d 1450, 1452 (9th Cir. 1993) (district court should permit compensation for the post judgment monitoring efforts by the plaintiff's counsel that are "useful and necessary to ensure compliance with the court's orders"); *Garrity v. Sununu*, 752 F.2d 727,

738-39 (1st Cir. 1984); *Adams v. Mathis*, 752 F.2d 553 (11th Cir. 1985); *Willie M. v. Hunt*, 732 F.2d 383, 385, 387 (4th Cir. 1984); *Bond v. Stanton*, 630 F.2d 1231, 1233-34 (7th Cir. 1980); *Northcross v. Board of Educ.*, 611 F.2d 624, 637 (6th Cir. 1979) ("Services devoted to reasonable monitoring of the court's decrees, both to ensure full compliance and to ensure that the plan is indeed working . . . are essential to the long-term success of the plaintiff's suit.") (citing 3rd Circuit's support for District Court's award of prospective fees to plaintiff's counsel); and

56.     The provision of whatever other relief the Court deems just, equitable and appropriate.

Dated: December 13, 2017                    Respectfully Submitted,


                                            */s/ Benjamin J. Sweet*
                                            Benjamin J. Sweet (PA Bar No. 87338)
                                            bsweet@carlsonlynch.com
                                            Kevin W. Tucker (PA Bar No. 312144)
                                            ktucker@carlsonlynch.com

                                            **CARLSON LYNCH SWEET KILPELA**
                                            **& CARPENTER, LLP**
                                            1133 Penn Avenue, 5th Floor
                                            Pittsburgh, PA 15222
                                            Phone: (412) 322.9243

                                            *Counsel for Plaintiff*